MRS. RAVEN P. NOLAND v. CANIE N. BROWN AND HIS GUARDIAN, FIRST UNION NATIONAL BANK AND TRUST COMPANY OF NORTH CAROLINA.

(Filed 27 February 1963.)

**1. Contracts § 27;    Quasi-Contracts § 1—**

Where, in an action against an incompetent and his guardian for personal services rendered the incompetent in nursing him prior to the time he was declared incompetent, plaintiff acknowledges payment in a specified amount for each day's service but declares upon an express contract that an additional amount per day would be paid later because of services in excess of an ordinary working day, nonsuit is properly entered upon failure of evidence of the express contract, since in such instance there is no question of recovery on *quantum meruit*.

**2. Trial § 26—**

 Nonsuit is properly entered when there is a material variance between the allegation and proof.

APPEAL by plaintiff from *Martin, S.J.*, November 1962 Civil Term of BUNCOMBE.

This action on contract was instituted December 15, 1961. Plaintiff is a registered nurse licensed by the North Carolina Board of Nurse Registration and Nursing Education. In her complaint she alleges that during the entire year 1960 and until August 19, 1961, she was employed by the defendant, Canie N. Brown, at twenty-two dollars per day to do twenty-hour daily nursing duty and to supervise the operation of his household; that during this entire period of time "plaintiff was performing more than twenty-hour duty per day as a registered nurse for the defendant, Canie N. Brown" and, during time in excess of the twenty-hour nursing duty, she supervised and operated the defendant's household; that the services she rendered him were reasonably worth twenty-two dollars a day but he only paid her sixteen dollars a day. She prays for judgment in the amount of $3,444.00.

On January 24, 1962, defendant was declared incompetent, and the First Union National Bank and Trust Company of North Carolina was duly appointed his guardian. The guardian's answer is a general denial of all the material allegations of the complaint. Plaintiff's evidence tended to show the following facts:

The usual and customary pay of registered nurses in the area was sixteen dollars per day for eight-hour duty and twenty-two dollars for twenty-hour duty.

Prior to her death in 1959, plaintiff nursed the wife of the defendant for seven and a half years. Thereafter, from January 6, 1959 until August 1961 when Mr. Brown was taken to a mental institution, plaintiff remained with him as his nurse and lived at the Brown home at 12 Stuyvesant Road, Biltmore Forest. In addition to performing an *eight-hour* duty as a registered nurse, she was in charge of the house and its servants who were a maid-cook, a yard man, and a house man who came once a week. Mr. Brown's three daughters lived elsewhere. Plaintiff ordered the groceries, supervised the meals, drove defendant's car, and took him to and from his office when he was able to go. At times during this period she was assisted by another registered nurse, Mrs. Alma Palmer. A short time before Mr. Brown was taken away, the two of them were assisted by a licensed practical nurse who was also on eight-hour duty.

To establish the contract upon which she sued, plaintiff relied on the evidence of Mrs. Palmer who testified, *inter alia*, as follows:

"Mr. Brown said that he was paying Mrs. Noland for 8 hour duty, and that he had had so much inheritance tax to pay that he wasn't paying her for 20 hour duty, but he was later. . . (H)e said he wanted to get it paid before anything happened to him because the children wouldn't want to pay it. . . (H)e had asked Mrs. Noland, you know, to wait for the twenty hour duty. He had paid her for . . . eight hours, then he was going to pay for twenty hour duty."

At the beginning of the trial, counsel for plaintiff stated that he was proceeding on a special contract but he did not care to make an election. At the close of the plaintiff's evidence, upon defendant's motion, the action was dismissed by a judgment of nonsuit and plaintiff appealed.

*Don C. Young for plaintiff appellant.*
*Van Winkle, Walton, Buck and Wall by Herbert L. Hyde for defendant appellees.*

PER CURIAM. The plaintiff has alleged a single indivisible contract. She avers that she agreed to render twenty-hour nursing service and to supervise defendant's household in consideration of his promise to pay her twenty-two dollars a day (the customary charge for twenty-hour nursing service) for these services. Apparently the supervision of the household was to be an incident to this duty. Plaintiff offered no evidence of the value of the services she actually rendered, no evidence that defendant agreed to pay her twenty-two dollars a day for them, and no evidence that he knew the nursing fee schedule for the area. Plaintiff concedes that she was paid sixteen dollars for each day she lived at the Brown home. She now seeks to recover a balance due under the alleged contract. Therefore, this is not a case for nominal damages. *Gales v. Smith*, 249 N.C. 263, 106 S.E. 2d 164; *Robbins v. Trading Post, Inc.*, 251 N.C. 663, 111 S.E. 2d 884. If plaintiff is to recover she must prove not only the special contract she has alleged but performance of her obligations under it. *Seed Co. v. Jennette Bros. Co.*, 195 N.C. 173, 141 S.E. 542; *Barron v. Cain*, 216 N.C. 282, 4 S.E. 2d 618. Proof of both is lacking. Furthermore, plaintiff alleged that her contract specified, and that she *performed*, twenty-hour nursing service. Her proof showed only eight hours. Nonsuit is proper where there is a material variance between the allegation and proof. *Lucas v. White*, 248 N.C. 38, 102 S.E. 2d 387.

Affirmed.